**Frank M. McCANN, Edward J. Stoll, Victor Vernon, Jr., Plaintiffs,**

**v.**

**Ruby V. PARIS, General Registrar, Electoral Board of the City of Lynchburg (Will D. Baugh, Chairman), State Board of Elections of the Commonwealth of Virginia (Levin Nock Davis, Secretary), Defendants.**

No. 65-C-27-L.

United States District Court
W. D. Virginia,
Lynchburg Division.

Sept. 13, 1965.

Frank M. McCann, Lynchburg, Va., for plaintiffs.

No counsel appeared for defendants.

John Doar, Asst. Atty. Gen., Civil Rights Division, Department of Justice, Washington, D. C., Thomas B. Mason, U. S. Atty., Roanoke, Va., David Rubin, Stephen F. Eilperin, Attorneys, Department of Justice, Washington, D. C., James C. Roberson, Asst. U. S. Atty., Roanoke, Va., Stephen Pollak, Dept. of Justice, Washington, D. C., on brief, for intervenor.

MICHIE, District Judge.

This is an action brought by the named plaintiffs, citizens of the Commonwealth of Virginia, duly qualified to vote in the city of Lynchburg under the Constitution and laws of Virginia. Alleging the impairment and abridgement of their rights as qualified voters under State law, they seek to enjoin the defendant State Board of Elections and the local electoral boards and registrars under its supervision from allowing the registration of state citizens who are not qualified to vote under the Virginia Constitution and laws, but who are now being registered under the provisions of the federal Voting Rights Act of 1965, P.L. 89–110, 79 Stat. 437–446 (approved by the President August 6, 1965), and they desire an order directing the state authorities to purge all registration books of the names of those individuals who have heretofore been registered under the federal Act. In seeking to enjoin the state's implementation of the Voting Rights Act, they attack the validity of that Act under the Tenth and Fourteenth Amendments to the United States Constitution, and therefore seek to enjoin the enforcement of the Act.

Upon the filing of the plaintiffs' complaint in this action, the Attorney General of the United States was informed of the plaintiffs' actions, and the United States thereafter sought to intervene on behalf of the defendants pursuant to 28 U.S.C. § 2403, alleging that the constitutionality of an Act of Congress affecting the public interest was drawn in question.

Thereafter, on September 11, 1965, argument was heard by this Court upon the complaint and an order to show cause why the United States should not be allowed to intervene in the action and why the action should not be dismissed for lack of jurisdiction over the subject matter. The order to show cause was entered by the Court at the instance of the United States on September 3.

■■ In oral argument the plaintiffs have conceded the right of the United States to intervene in the action. Unquestionably the Voting Rights Act is one which affects the public interest, and the United States therefore has the right to intervene under 28 U.S.C. § 2403. I have accordingly granted the motion for intervention. Additionally, plaintiffs now concede that this Court may not grant the preliminary injunction which they sought as relief prior to the convening of a three-judge court pursuant to 28 U.S.C. § 2282. A single district judge may not enjoin the enforcement of an Act of Congress on constitutional grounds. A three-judge court must first hear the case under § 2282. A single judge may grant a temporary restraining order under 28 U.S.C. § 2284(3) to avoid irreparable damage, but it is unnecessary to consider this point further in light of the fact that I have concluded that I lack

subject matter jurisdiction over this action. This conclusion is compelled by the terms of section 14(b) of the Voting Rights Act:

No court other than the District Court for the District of Columbia or a court of appeals in any proceeding under section 9 shall have jurisdiction to issue any declaratory judgment pursuant to section 4 or section 5 or any restraining order or temporary or permanent injunction against the execution or enforcement of any provision of this Act or any action of any Federal officer or employee pursuant hereto.

In this action the plaintiffs have sought injunctive relief against the named defendants, requiring them to cease registering those Virginia citizens not qualified under State law but allowed to register under the Voting Rights Act, and to purge voting rolls of those citizens already registered under the provisions of the Act. The government contends that section 14(b), quoted above, is plainly applicable and that this Court therefore has no jurisdiction in the premises.

To avoid this effect of section 14(b), the plaintiffs have argued, first, that Congress did not intend to withdraw jurisdiction from district courts, other than the District Court for the District of Columbia, where the suit is brought by an individual voter of a state. Section 14(b), the plaintiffs argue, is applicable only to actions brought by a state or political subdivision thereof. To support this contention, the plaintiffs cite the reports of the Senate, House of Representatives, and Conference committees on the 1965 Act, none of which refer to individual actions seeking to enjoin the enforcement of the Act.

■ I can find no merit in the plaintiffs' argument. A careful reading of the plain wording in section 14(b) is itself the best answer to the contention. The statute speaks in terms of the jurisdiction of courts; it does not lend itself to a restriction based upon who the parties are before the court. Its proscription is broad and plain. Where the wording of a statute is clear, it is immune to judicial refinement and restriction.

Moreover, the legislative history of the provision belies the plaintiffs' argument. In reporting out the Senate version of the Voting Rights Act, S. 1564, the Senate Judiciary Committee, in its Joint Statement of Individual Views subscribed to by a majority of the Judiciary Committee, stated as to section 14(b):

All challenges to the constitutionality or legality of any provision of this bill or any action taken pursuant to it must be litigated in the District Court for the District of Columbia or, when applicable * * * in the appropriate court of appeals.

S. Rep. No. 162, Part 3, 89th Cong., 1st Sess. 31 (1965). And in defending section 14(b) thereafter on the floor of the Senate against a proposed amendment which would have deleted it, Senator Tydings, a member of the Senate Judiciary Committee which had considered the Act in detail, stated of section 14(b):

There was a reason why the committee included that section. It is obvious that a great many suits unquestionably will be arising from enforcement of the act. If the pending amendment were adopted and this provision were taken out of the bill, suits could be going on in many districts within the same circuit. Different suits could be going on in different circuits. All of them would lack uniformity. It is conceivable that there might be different rulings in two districts of the same circuit.

We felt that it would be commendable to have one court handle these matters in order to have uniformity.

111 Cong.Rec. at 11068 (daily ed. May 25, 1965).

The proposed amendment which would have deleted section 14(b) was defeated, and section 14(b) of the final Act is substantially identical to the S. 1564 provision which Senator Tydings defended on the Senate floor.

■ If section 14(b) was prompted by a desire on the part of Congress to

obtain uniformity of judicial decision in the first hectic months after passage of the Act, that Congressional desire would be frustrated quite as effectively by suits brought in different districts by individual plaintiffs as by suits brought by states or political subdivisions thereof. Whether Congress was mindful that suits might be brought by individual plaintiffs (and section 9 of the Act, providing for challenge of applicants registered by federal examiners indicates that it was) is not significant. The significant point is that Congress desired that no constitutional attacks on the Act be heard in any district court other than that in the District of Columbia. I conclude that Congress did not intend that this Court should have jurisdiction over this suit.

Plaintiffs next argue that section 14 (b), if it is applicable to them, is unconstitutional under the Fifth and Fourteenth Amendments to the United States Constitution, i. e., it is a denial of equal protection of the law under section 1 of the Fourteenth Amendment and, therefore, ipso facto a denial of due process of law under the Fifth Amendment which applies to the United States. The argument is premised upon the provisions of the Act itself. Plaintiffs cite section 17 of the Act, which provides: "Nothing in this Act shall be construed to deny, impair, or otherwise adversely affect the right to vote of any person registered to vote under the law of any State or political subdivision." Plaintiffs then turn to section 14(c)(1) of the Act which defines the term "vote" as encompassing "all action necessary to make a vote effective," including "having such ballot counted properly and included in the appropriate totals of votes cast."

From these provisions the plaintiffs draw the argument that they are denied equal protection of the law because they have to bring suit in the District of Columbia to uphold their alleged rights. This is a denial of equal protection, they assert, because the Act defines "voting" as having one's vote counted properly as well as casting it. Since this is so, they are not treated equally because under the statute they must go to the District Court for the District of Columbia to protect the value of their votes from diminution by the registration of new voters under the Act while the new voters do not have to go to the District of Columbia in order to obtain their franchise.

I find this argument unpersuasive. Its fallacy lies in the equation of the right to cast one's vote with the right to keep another off the voting list. Section 14(c) (1) makes it clear that voting includes all that is necessary for the individual to secure his voice in the political life of the nation. It would be a perversion of that section, however, to equate the right of each individual to be heard by his vote with the right to keep an allegedly unqualified voter from casting a ballot. Indeed, the two acts can never be performed in the same way. Plaintiffs' argument would seemingly require that the challenge of another's vote be performed with the same ease as that with which one casts his own ballot. That, of course, is a practical impossibility.

The principle is well established that Congress may limit the jurisdiction of the lower federal courts as it sees fit. These courts derive their jurisdiction wholly from the exercise of Congress' authority to "ordain and establish" inferior courts under Article III, section 1 of the Constitution. Congress need not have established any inferior courts, and it might today take all jurisdiction from them if it so desired. See Lockerty v. Phillips, 319 U.S. 182, 187–188, 63 S.Ct. 1019, 87 L.Ed. 1339 (1943), and cases cited therein. Congress may therefore place jurisdiction in any particular lower court to determine a particular question arising under the Constitution and laws of the United States. Bowles v. Willingham, 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892 (1944); Lockerty v. Phillips, supra. Upon the arguments presented here I am not persuaded that Congress has limited this Court's jurisdiction in a manner which deprives any citizen of the United States of a constitutional right.

The parties are in agreement that a single judge may dismiss an action for

lack of subject matter jurisdiction even though the action is one which, if the court had jurisdiction, would require a three-judge court. Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed.2d 152 (1933). The three-judge court act was amended in 1942 to provide that a single judge may not dismiss the action. See 28 U.S.C. § 2284(5). However, this provision has not been applied to dismissal for lack of subject matter jurisdiction. Eastern States Petroleum Corp. v. Rogers, 265 F.2d 593, mandamus denied Eastern States Petroleum Corp. v. Prettyman, 361 U.S. 805, 80 S.Ct. 93, 4 L.Ed.2d 56 (1959); Jacobs v. Tawes, 250 F.2d 611 (4th Cir. 1957); cf. Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962).

Accordingly, this action will be dismissed for lack of jurisdiction over the subject matter. In so doing, I have no occasion to determine now whether, or to what extent, the plaintiffs may challenge the constitutionality of the Act in any other court.

An order dismissing the action will accordingly be entered.